```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


HALBERT WILSON,                  )
                                 )
            Petitioner,          )
                                 )
      v.                         )        No. 4:07 CV 821 CAS/DDN
                                 )
TROY STEELE,                     )
                                 )
            Respondent.          )
```

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the petition of Missouri state prisoner Halbert Wilson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to the undersigned Magistrate Judge for review and a recommended disposition pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, the undersigned recommends that the petition be denied.

**I. BACKGROUND**

Following a jury trial in the Circuit Court of the City of St. Louis in 2002, petitioner Wilson was convicted of one count of first degree statutory rape and two counts of first degree statutory sodomy. (Doc. 12, Ex. 6 at 4-5.) He was sentenced to concurrent terms of twenty-one years imprisonment on each count. (Id., Ex. 1 at 596, 605.) On direct appeal, petitioner argued the trial court erred by admitting into evidence hearsay statements by D.H., the minor victim. (Id., Ex. 3 at 10.) The Missouri Court of Appeals affirmed the conviction and sentence. (Id., Ex. 5); State of Missouri v. Wilson, 110 S.W.3d 852 (Mo. Ct. App. 2003)(summary order).

In 2003, petitioner moved for post-conviction relief under Missouri Supreme Court Rule 29.15. (Id., Ex. 7 at 1, 3-8.) In his original pro se motion he alleged he received constitutionally ineffective assistance of counsel, because his counsel (1) failed to investigate and present a "valid defense," (2) failed to give an opening statement to the jury at trial, and (3) failed to preserve for appellate review in limine objections he made to the jury instructions. (Id., at 4-5.) In his

amended motion for post-conviction relief, filed with the aid of counsel, petitioner alleged that his trial counsel rendered constitutionally ineffective assistance (1) by failing to pursue a defense that the victim and her mother fabricated the alleged incident, and (2) by failing to request a limiting jury instruction regarding the admission of a delayed report of the incident. (Id., Ex. 7 at 16-18.) After an evidentiary hearing, the circuit court denied the motion. (Id., Ex. 6 at 1, 4; Ex. 7 at 44-45.)

On direct appeal from the denial of post-conviction relief, petitioner argued the grounds he alleged in his amended motion. (Id. Ex. 8 at 12-14.) The denial of relief was affirmed. (Id., Ex. 10); Wilson v. State of Missouri, 209 S.W.3d 53 (Mo. Ct. App. 2006)(summary order). Petitioner did not appeal to the Supreme Court of Missouri. (Doc. 1, Ex. 1 at 4.)

## II. PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

In this federal petition for habeas corpus relief, petitioner alleges he received constitutionally ineffective assistance of counsel in three respects:

(1) His trial counsel failed to investigate and take pictures of the area of the offense in order to show that the criminal activity alleged against him was fabricated by the victim because she did not want to get into trouble for getting "caught in the act."

(2) His trial counsel failed to make an opening statement to the jury at trial.

(3) His trial counsel failed to preserve for appellate review his objection to the trial court's misleading jury instructions relating to the changing of the times that the offenses occurred.

Respondent argues that petitioner is procedurally barred from asserting these grounds in this action because he did not properly assert them in his state court motion for post-conviction relief. Respondent further argues that even in the absence of a procedural bar petitioner's grounds for relief are without merit.

> Claims that have not been presented to the state courts, and
> for which there are no remaining state remedies, are
> procedurally defaulted. Interiano v. Dormire, 471 F.3d 854,
> 856 (8th 2006). Unless a habeas petitioner shows cause and
> prejudice or that he is actually innocent of the charges, a
> court may not reach the merits of procedurally defaulted
> claims in which the petitioner failed to follow applicable
> state procedural rules in raising the claims. Wainwright v.
> Sykes, 433 U.S. 72, 87 (1977); Murray v. Carrier, 477 U.S.
> 478, 492 (1986).

Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir. 2007). Proper presentation of federal habeas grounds to the Missouri state courts, includes presentation not only to the circuit court but to the appellate court. Turnage v. Fabian, 2010 WL 2244382, slip op. No. 09-1668, at *3 (8th Cir. June 7, 2010); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997). Further, to properly present the federal grounds to the state court, petitioner must have alleged the same factual bases and invoked the same legal bases for the grounds. Turnage v. Fabian, at *3-5.

Petitioner's specifications of constitutionally ineffective assistance of counsel are (1) trial counsel failed to investigate and pursue a defense theory that the minor victim fabricated her accusations against him because she feared her parents' wrath because she had been caught in a sex act with a small boy companion, (2) trial counsel failed to make an opening statement at trial, and (3) trial counsel failed to preserve for appeal his objection at trial to misleading jury instructions about the times the offenses occurred. None of these grounds were raised on direct appeal from the conviction, (Doc. 12, Ex. 3 at 10); they are more properly raised in a motion for post-conviction relief. Mo.S.Ct.R. 29.15(a).

In his original motion for post-conviction relief, petitioner alleged (1) generally that trial counsel failed to investigate a "valid defense" with picture-taking and questioning of a certain witness (Doc. 12, Ex. 7 at 4); (2) that trial counsel failed to make an opening statement to tell the jury about the nature of the case, to outline the anticipated proof, and to describe the evidence that would prove petitioner was not guilty (id.); and (3) that trial counsel failed to include in his motion for a new trial his objections about "misleading instructions" (id.). The original motion was supplanted by an amended

motion that was prepared with the assistance of counsel.  Mo.S.Ct.R. 29.15(g)("the amended motion shall not incorporate by reference material contained in any previously filed motion").

In his amended motion for post-conviction relief, petitioner alleged (1) his trial counsel failed to pursue fabrication by the victim based upon her mother wanting to get back at petitioner for telling the police that the mother paid him with stolen checks for doing roofing work for her (Doc. 12, Ex. 7 at 16); and (2) trial counsel failed to request a jury instruction regarding the delayed reporting of the crime (id. at 17).  The circuit court denied relief on the grounds raised in the amended motion.  (Id. at 43-44.)

Petitioner's points relied on appeal to the Missouri Court of Appeals were (1) trial counsel's failure to pursue a victim fabrication defense due to her mother's desire to get back at petitioner for reporting a check scheme involving her to the police, and (2) trial counsel's failure to request a limiting instruction about the victim's delayed reporting of the crimes.  (Id., Ex. 8 at 12-14.)  Petitioner's appeal did not assert failure to give an opening statement.  (See id.) The Missouri Court of Appeals denied relief on the points petitioner raised on appeal.  (Id., Ex. 10.)

Thus, it clearly appears that petitioner presented none of his federal habeas grounds to both the Missouri circuit court and to the Court of Appeals.

Petitioner has not asserted any cause that excuses his procedural default.  Further, his procedural default is not excused under Schlup v. Delo, 513 U.S. 298, 324 (1995), because the record does not support the conclusion there is new and reliable evidence of his innocence such that no reasonable juror would have voted to find him guilty, absent the asserted constitutional violation.  Schlup, 513 U.S. at 329.  In the post-conviction relief evidentiary hearing, petitioner testified that he would have testified at trial in his own defense in order to support an alternative theory of witness fabrication if his attorney had properly investigated the theory, but that his counsel did not do so and dissuaded him from so testifying.  (Doc. 12, Ex. 6 at 18-20.) Petitioner testified that this testimony would have described his

criminal behavior toward the victim's mother who then persuaded the victim to make the criminal allegations against him. (Id. at 20-21.)

If petitioner had so testified at trial, the state would likely have been permitted to introduce evidence of petitioner's involvement in the criminal acts with the mother of the victim. (Id. at 34-35.) For this reason, petitioner and his counsel made the strategic decision that petitioner would not testify, to avoid this disclosure to the jury. (Id.) Petitioner and defense counsel also sought to avoid disclosure of petitioner's prior criminal history. (Id. at 34, 43.) Because they decided that they would not pursue this theory, the lack of investigation that petitioner now complains of was entirely reasonable.

In light of the state's evidence against petitioner and because petitioner presented a reasonable alternate defense theory, the record does not support a conclusion that no reasonable, properly instructed juror would have voted to convict petitioner if petitioner's counsel had pursued the alternate theory of the crime.

Because petitioner has not satisfied the Schlup standard, he has not cured his procedural default. And his federal habeas grounds are procedurally defaulted and barred from general consideration by this court. However, Congress has legislated that the court may dismiss the action on its merits if the grounds asserted are without merit. 28 U.S.C. § 2254(b)(2).

### III. MERITS OF THE FEDERAL HABEAS GROUNDS

As stated, petitioner alleges three specifications of constitutionally ineffective assistance of counsel.

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to clearly" established law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or ... decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000)(plurality opinion). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The standard for habeas review articulated by AEDPA applies only to those claims which were adjudicated on the merits by a state court. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) (stating that the AEDPA standard governs petitions for habeas corpus "which were adjudicated on the merits in state court proceedings."). Where a petitioner's claims were not adjudicated on the merits by a state court, the pre-AEDPA standard for habeas review governs. Id. ("Because this claim apparently was not adjudicated by the Minnesota court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial or that the verdict likely would have been different absent the now-challenged [defect]." Id. at 866 (internal quotations omitted). See also, Carter v. Larkins, No. 07 CV 1581 CDP, 2009 WL 3068094, at *4 (E.D. Mo. Sept. 23, 2009)(Chief Magistrate Judge Mary Ann Medler Report and Recommendation adopted by Chief District Judge Catherine D. Perry); Chatman v. Steele, No. 4:08 CV 1656 DDN, 2009 WL 5030784, at *3 (E.D. Mo. Dec. 14, 2009); Woelfel v. Burt, No. 06 CV 2009 LRR, 2008 WL 5110738, at *2 (N.D. Iowa Dec. 4, 2008).

The Supreme Court requires two elements for a successful claim of constitutionally ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors

> so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). When a federal habeas court must consider ineffective assistance of counsel claims "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

The Missouri Court of Appeals described thus the facts indicated by the evidence that supported the jury's verdicts:

> The victim, "D.H.", was seven years old when she reported that defendant, her great uncle, had performed various sex acts against her. The state sought to introduce evidence from adult witnesses to whom D.H. had reported the acts. After a pre-trial hearing, the trial court found sufficient indications of reliability and ruled the statements would be admissible at trial pursuant to section 491.075.
>
> . . . [D.H.'s mother] J.B. testified that on April 15, 2001 D.H. had gone to a friend's house to play. An hour and a half later, D.H. came running to J.B.'s house with her friends following behind her. The friends were yelling, "D.H. is doing the nasty." D.H. ran to the bathroom crying. J.B. asked the older friend, age eight, to come into the house. The friend told J.B. that she saw D.H. "suck on little Ron's private." Ron was also seven years old.
>
> D.H.'s parents both asked D.H. to come out of the bathroom. Crying, D.H. left the bathroom. The parents asked the friend to leave and began questioning D.H. When the parents asked D.H. who taught her to do that, she said "Uncle Halbert taught me to do that." D.H. was referring to defendant, Halbert Wilson. The mother also testified that D.H. did not know her actions were wrong.
>
> J.B. then ran into the bathroom crying. When she had calmed down, J.B. left the bathroom and heard D.H. telling her father that defendant taught her how to suck his private.

D.H. then simulated what defendant taught her using a doll. D.H. also spoke of an incident at defendant's apartment when defendant was "playing with his private on her" and "white stuff came on her." J.B. also recounted D.H. telling her about another time when defendant was "feeling on her." The father asked D.H. if defendant put anything in her, like his private. D.H. said he did not.

Sheldon Wight also testified at trial. Wight was a detective with the child abuse unit of the St. Louis Police Department. He testified concerning a conversation held with D.H. on April 16, 2001. D.H. told him that defendant put "his privacy" in her mouth and that it choked her. D.H. also informed him that defendant said, "Ooh, it feels good" when he was doing this. D.H. revealed to Wight that this had happened more than ten times. During the interview, D.H. said that defendant had threatened her if she told anyone.

Wight then gave D.H. anatomically correct dolls. D.H. quickly pulled the pants down on the male doll and forced the penis of the male doll into the mouth of the female doll. D.H. also tried to position the male doll's hand behind the female doll's head. D.H. later used the dolls to depict genital-rectal and genital-genital intercourse. D.H. told Wight that these incidents occurred in defendant's apartment. Wight testified that D.H. did not appear surprised to find genitalia on the dolls.

Finally, Tijen Omurtag, a pediatric medical social worker, testified concerning out of court statements made to her by D.H. during an interview on April 25, 2001. A videotape of the interview was admitted into evidence. During the interview, D.H. again used dolls to indicate genital-oral, genital-rectal, and genital-genital intercourse. At the time, D.H. used terminology such as "coo-cat" and "privacy" or "private" to refer to her genitalia and, on at least one occasion, referred to defendant's genitalia using the "D word."

At trial, D.H. testified concern[ing] the acts done by defendant. Using anatomically correct dolls, D.H. showed the court what defendant had done with her. Her testimony included depictions of genital-genital, genital-rectal, and genital-oral contact.

(Doc. 12, Ex. 5 at 2-4.)

**GROUND 1**

In Ground 1 petitioner asserts that he received ineffective assistance of counsel because counsel failed to investigate and to take pictures of the area of the offense in order to show that the victim fabricated the incident. Petitioner asserts that this investigation would have provided grounds for a fabrication defense, and petitioner would have testified in support of this defense. Petitioner spoke to this issue during his sentencing hearing:

> Yeah, I feel that I wasn't completely properly represented, because I asked my lawyer to take pictures and he didn't. From what some of the stuff that was said, it would have been found to be a lie, you know, if he had t[aken] pictures of my apartment. I also asked him to bring in my ex-landlord on a previous case that I was accused of and was cleared from it. It was still on my record. I didn't know it was on my record. If he had brought her in, I could have took the stand myself, you know. She wasn't brought in as a witness.

(Id., Ex. 1 at 599.)

During the post-conviction relief hearing in the circuit court, petitioner and his counsel discussed their differing positions about a different defense theory, that the minor victim fabricated the allegations in order to avoid getting in trouble with her parents. (Id., Ex. 6 at 45-50.) Trial counsel chose to pursue a victim fabrication defense, which he summarized during his closing argument at trial:

> Her mother is, quite honestly, completely naturally totally freaking out over this sort of unnatural act. The child, by the mother's own admission, is petrified which would make normal sense. She knows she's in trouble. What she does, when she's initially asked the questions, mom, none of this happened. A few minutes later, when she knows daddy is sitting around talking to her, she says, What do you mean? None of this happened. Who taught you how to do this? Now she's got an escape, and the blame game begins. Uncle Halbert taught me to do that and the trouble disappears.

(Id., Ex. 1 at 576.) During the hearing on the motion for post-conviction relief, petitioner's trial counsel explained his decision to pursue a theory of victim fabrication rather than witness fabrication on the part of the victim's mother:

> [I]t was much more believable that she would have lied to save her own skin than the mother – than it would be that the mother had basically told her daughter to lie about this in order to get Halbert in trouble for involving her in the check writing scheme.
> * * *
> I selected what I perceived as being the stronger defense to work with. The reason why I didn't go down the road of the check writing scheme itself was because it deflected from what I considered to be the central theme of the defense. . . . [I]t first of all puts Halbert into a scheme that we don't have to necessarily raise because he would be complicit in the same check writing scandal. Any way I asked the question I didn't want Halbert's criminal history coming out, number one. Number two, I just couldn't believe that he--I don't think I could convince twelve people that a grown woman would sit in the courtroom through a 4-day child sex trial because she got involved in a misdemeanor. I simply don't think that would set well with a St. Louis jury.

(Id., Ex. 6 at 49-50.)

In his federal habeas petition petitioner Wilson claims that trial counsel should have taken "pictures of the scene, where the alleged offense occurred[,] to be able to depict that this could not have happened, and that the victim was lying." (Doc. 1 at 7.) At trial, the evidence was that petitioner assaulted the victim more than ten times (Doc. 12, Ex. 1 at 375), with at least one incident in petitioner's bathroom. (Id. at 466-67.) In the post-conviction evidentiary hearing, petitioner testified:

> I also asked [trial counsel] about going to my apartment and look around and take some pictures if he could.
> * * *
> And he said he looked at the apartment and in the bathroom area and there was no way I could have done anything in that area due to the way it was made because . . . part of my tub was going . . . under the wall and coming out into the pantry. You know, it made my bathroom so small.

(Id., Ex. 6 at 6-7.) Petitioner's post-conviction counsel did not ask trial counsel any questions about petitioner's request that trial counsel take photographs of petitioner's apartment, whether trial counsel did so or not, and what his strategy would have been as to the taking or not taking of those photographs. (Id., Ex. 6 at 38-58.) Post-conviction counsel also did not ask petitioner specifically how the

bathroom layout would have rendered the sexual assaults difficult or impossible in that bathroom.

The Supreme Court has stated:

> it seems clear that Congress intended federal judges to attend with the utmost care to state-court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ. Likewise, the statute in a separate provision provides for the habeas remedy when a state-court decision "was based on an unreasonable determination of the facts <u>in light of the evidence presented in the State court proceeding</u>."

<u>Williams v. Taylor</u>, 529 U.S. at 386.

Petitioner did not present sufficient evidence in the state-court post-conviction evidentiary hearing to establish that the state proceedings were "infected by constitutional error sufficiently serious to warrant the issuance of the writ." <u>Id.</u> Neither has petitioner provided the court with a sufficient basis to overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Strickland</u>, 466 U.S. at 689. Presentation of one theory of the crime over another possible theory of the crime also does not overcome this strong presumption, and thus does not satisfy the standard for constitutionally ineffective assistance of counsel as articulated in <u>Strickland</u>.

By Ground 1, petitioner has not established that his trial counsel rendered unreasonable assistance of counsel. Ground 1 is without merit.

**GROUND 2**

In Ground 2 petitioner asserts that he received ineffective assistance of counsel when counsel failed to give an opening statement. The Eighth Circuit has declined to find that the failure to make an opening statement objectively prejudices defendants. <u>Fink v. Lockhart</u>, 823 F.2d 204, 206 (8th Cir. 1987). Other courts have expressly held that the failure to make an opening statement does not rise to the level of ineffective assistance of counsel. <u>Fox v. Ward</u>, 200 F.3d 1286, 1296 (10th Cir. 2000)("it is well-settled that the decision to waive an

opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel."); United States ex rel. Crispin v. Mancusi, 448 F.2d 233, 237 (2d Cir. 1971) (waiver of opening statement "trivial" and a matter of trial strategy).

Petitioner argues that trial counsel should have given an opening statement, because it would have told the jury that he was innocent and the state had the burden of proving guilt beyond a reasonable doubt. Petitioner did not present any evidence at trial, but cross-examined the state's witnesses. Trial counsel summarized and attacked the state's evidence in his closing argument to the jury. (Doc. 12, Ex. 1 at 574-85.) The jury instructions clearly informed the jury that the state carried the burden of proving petitioner's guilt beyond a reasonable doubt. (Id. Ex. 2 at 84.)

Under the totality of the circumstances of this case, petitioner has not shown either that his counsel failed to provide him with reasonable representation by declining to make an opening statement and petitioner has not shown he was prejudiced by this. The elements of the opening statement, that petitioner claims were not provided by counsel, were given to the jury by his attorney's closing argument and by the court's instructions to the jury.

For these reasons, this ground is without merit.

**GROUND 3**

Petitioner's third ground for federal habeas corpus relief is that his trial counsel failed to preserve for appeal the in limine objection to the trial court's misleading instructions to the jury. It is unclear what instruction or objection petitioner refers to. The undersigned has liberally interpreted this pro se claim.

In petitioner's post-conviction relief evidentiary hearing, petitioner's trial counsel testified that he (counsel) had considered the possibility of crafting specific instructions, but believed that he (counsel) was limited by the Missouri Approved Instructions given the situation and testimony at issue. (Id., Ex. 6 at 53-54.)

Petitioner's petition argues that the dates of the offenses were changed in the instructions. (Doc. 1, Ex. 1 at 8.) His post-conviction

relief hearing testimony did not address this allegation, nor was it presented to the Missouri Court of Appeals.  (See Doc. 12, Ex. 6, Ex. 8.)  The dates of the offenses listed in the instructions were the same as those alleged in the indictment.  (Id., Ex. 2 at 6-7, 81-93.)  The only attempt to change the dates was made by the prosecuting attorney prior to the opening statements, outside the presence of the jury, and was not pursued.  (Id., Ex. 1 at 341-43.)  Petitioner does not allege any way that this may have prejudiced him.  Accordingly this allegation does not satisfy the Strickland standard.

Ground 3 is without merit.

## VI. CONCLUSION

For the reasons stated above, it is the recommendation of the undersigned that the petition of Halbert Wilson for a writ of habeas corpus under 28 U.S.C. § 2254 be denied and the action dismissed.

The parties are advised they have until not later than June 25, 2010 to file documentary objections to this Report and Recommendation.  The failure to file timely documentary objections may waive the right to appeal issues of fact.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 8, 2010.